The next case this morning is number 5-20-0277. Board of Education of Roxana Community School District versus Regional Board of School Trustees of Madison County. Arguing for the appellant Board of Education of Roxana Community School District is Robert Jackstap. Arguing for the appellees Jay and Sharon Hesse is Catherine Smith. Arguing for the appellee Regional Board of School Trustees of Madison County is William Schooley. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. The appellees will be splitting their time. Please note only the clerk is permitted to record these proceedings. Okay. Good morning to each of you. Good morning sir. If the appellant is ready to go. Good morning. You're going to go first? Okay. You guys are and Ms. Smith will follow me. Okay. Okay. All right Mr. Jackstap. Thank you. Good morning. May it please the court Mr. Schooley, Ms. Smith. My name is Robert Jackstap. I represent the appellant Board of Education of Roxana Community School District number one in this case. This case involves the judicial review of a decision made by the Madison County Regional Board of to leave the Roxana School District and to join the Edwardsville School District. By way of background, the Hesse's have lived at 10 Hesse Drive since 2002. The property is generally located at the southeast corner of Route 143 and Wanda Road, South Moreland Road. The Hesse's have one child, a son named Holden, who was born February 10, 2010. After attending kindergarten through fourth grade at St. Boniface in Edwardsville on April 29, 2019, the Hesse's filed a petition with the Regional Board to detach their real estate from the Roxana School District and to annex their property to the Edwardsville School District. On June 24, 2019, the Regional Board held a hearing at which testimony was heard on the detachment petition. At the end of the hearing, the Regional Board granted the Hesse's petition by a 4-2 vote. The Regional Board issued its written order on June 28, 2019. On August 1, 2019, the Roxana Board timely filed a complaint for administrative review of the Regional Board's final administrative decision. The Circuit Court entered its order denying the complaint on August 28, 2020, and a timely notice of appeal was filed on September 9, 2020. Via this appeal, the Roxana School Board respectfully requests the Regional Board's decision be reversed. We have articulated three issues on appeal that provides the framework for a reversal. First, at best, the only evidence presented by the Hesse's during the hearing before the Regional Board was related to the community of interest and whole child factors. Second, as a matter of law, these community of interest and whole child factors can only be considered by the Regional Board after the property owners show that there was a significant direct educational benefit for their son Holden to attend Edwardsville Schools as opposed to Roxana Schools. If you remove or erase the evidence of the student report cards, there was insufficient evidence to support the required finding. Third, as a matter of law, the school report cards were improperly considered by the Regional Board of School Trustees. Thus, it is the appellant's position that two of the three issues on appeal involve questions of law that are reviewed under the board's with guidance on how to approach boundary changes through detachment underwent fundamental change. Regional boards are now supplied with very specific guidance on how to address the various factors. And most importantly, regional boards are now directed to follow a specific order to make their determination. The Illinois school code sections dealing with the school district detachment and annexations are set forth in the opening brief filed by the Roxana School Board. When reading the statute, one could ask, in what situation can the regional boards of school trustee consider the school report cards for the relevant school districts? The section of the school report cards, the school report cards for the detaching and annexing districts. Only if there is no more than a 3% difference in the minority, low income, and English learner student populations of the relevant schools of the districts. Mr. Jackson, let me stop you there. I know that you hone in on the language in that section of only if, and I know that you later point out that Judge Streichel substituted unless for those two words. Obviously, the appellees, they hone in on a different word, and that is and in there where we're discussing the three factors. I'd really like to hear what your position is with regard to the and. I know what your brief says. I know what their briefs say. I'm going to be honest. I think that if the legislature wanted each one of those things individually to have to be in place, they phrased it poorly and being in there. It seems to me like the goal of this section was to make sure that when someone is trying to annex out of one school district into another, that the two districts are relatively the same before the school report cards come into play. It doesn't mean that they have to be exactly the same. So if you could talk to us a little bit about the and and how you get around that, I would appreciate it. I don't know really, Your Honor, how I get around it. I'm embracing the word and. I don't know what else to say. I actually agree that it has to be read as written and it includes the word and. The legislative history suggests that they want the school districts to be similar before you consider the school report cards. And the legislature has said you make you shall consider the school report cards. The operative word, I believe, is only if. Right. And then you go through the checklist. Only if there is no more than a three percent difference in the minority. Okay, but if we stop there, there's in this case, there's more than 3% in the minority. There's more than 3% in the low income, but there is less than 3% in the English learners. So How and how, if you're embracing the and and suggesting that all three things need to be in place and less than or in greater than 3% one of them is not. Does that sink your, your argument that on now, Your Honor, I believe it actually supports it. Because what I'm saying is all three have to be in place. You have to be 3% or lower in minority, you must be 3% or lower in low income and that's consistent with the legislative intent that these school districts be similar. So, in our situation, whether there is no more than a 3% difference in the minority populations, you could stop right there because you have to have 3% or less in all three in order for the legislature to consider these school districts similar in order for the regional board to utilize the school report cards. So, ironically, ironically, the regional board initially agreed with this reading of the relevant statute after some discussion and before any evidence was presented by the parties Council for the regional board stated as follows, and I'm reading from the appendix page 20. And I'm quoting for the board members. If you look at the agenda. And we discussed this in orientation. The statute was amended a few years ago to indicate that we could not use school report cards. If there was more than a 3% difference in low income and minority and there was one other yeah English learners difference between the two districts. In other words, between Edwardsville and Roxanna. We can't use therefore the school report cards in so much as they show the difference between the two, but on the face of them. It does establish between the two districts is more than 3% And so I that's the reason why we mark them as an exhibit. So the record is clear that we will not be considering those because of the 3% difference, which is shown on the report cards. So exhibit seven will be admitted for that limited purpose of showing there is more than 3% difference in low income students. Without a doubt, the regional board originally interpreted statute correctly. The regional boards later position reach during executive session, while in deliberation that the statute does not apply, since there was not a 3% difference in all three categories must be rejected. Our threshold argument is clear and simple. If you remove the unlawful evidence of the school report cards, then the regional boards determination that there would be a significant direct educational benefits of the Hesse's child. If the change in boundaries were allowed is indeed against the manifest weight of the evidence. The regional board concedes it was the school report cards evidence that allegedly supports the erroneous finding that there was a significant direct educational benefit to hold in Hesse. During arguments before the circuit court, the regional board again pointed out how it relied on the information contained in the school report cards. Including graduation rates, standardized testing and teacher retention. In its brief file with the circuit court, the regional board states the admission of the school report cards. Is crucial here in as in as much as they demonstrate a significant direct educational benefit to Jay and Sharon Hesse, their child and their property. The regional board further itemized how certain information contained on the school report cards favors educational schools, including English language arts, math proficiency and graduation rates. If this information contained in the school report cards were properly excluded under Illinois law, it is clearly evidence there is insufficient evidence to In the record to support a finding that there was a significant direct educational benefit to the Hesse's child. Is there any evidence of that nature outside of what was in the school report cards that was presented by the Hesse's at that hearing. No, Your Honor. It is our position that clearly the evidence that was provided by the Hesse's relate only to whole child and community of interest. type of evidence. At best, you might see an argument that it was the Hesse's preference that they attend Edwardsville versus Roxanna, but there's all kind of case law that personal preference. Is insufficient to support a detachment. The Hesse's presented basically two witnesses themselves. Their testimony at the hearing really track closely to the arguments raised in their written petition. As the Hesse's discussed their connection to the Edwardsville area and the child's activities. Without a doubt, their evidence consisted entirely of trying to show community of interest in Edwardsville compared to Roxanna. Ironically, the only evidence presented in the record was produced by Roxanna through its superintendent and assistant superintendent. That did talk about the educational programs, curricular school facilities and technology, which actually supported Roxanna schools. So it is our position that the plaintiff's Hesse's never provided any relevant evidence regarding educational programs, curricular school facilities or technology to carry their burden of proof to show that there would be a significant direct educational benefit to Holden at Edwardsville schools compared to Roxanna schools. And again, under the current version of the statute, regional boards are not directed to follow a very specific order to make their determination under 7-6 I-2 which reads The community of interest of the petitioners and their children and the effect detachment will have on the whole child may be considered only if the regional board of school trustees first determines there would be a significant direct educational benefit to the petitioners children if the change in boundaries were allowed. Prior to this change in the law, regional boards simultaneously evaluated several factors to determine whether or not to grant a detachment petition. The shepherd versus regional board of school trustees case represents the only reported appellate court decision that analyzes a detachment under the new applicable Illinois detachment statute. This case provides a great background of the historical factors that used to be considered by courts throughout the state of Illinois. Based on the law and the evidence, we believe the regional board's decision should be reversed. First, Illinois law does not allow the regional board to compare the school report cards unless the minority low income and English learner populations are similar. That is no more than a 3%. It's clearly evident that the remaining evidence did not support the finding of a significant direct educational benefit to Holden Hessey if the petition were granted. And finally, Illinois law does not allow the regional board to consider community of interest and whole child factors without a proper determination. I know your time's up, but I'm going to give you a chance to answer one more question that I have. And that is, is it significant and how commonplace is it in a request for annexation into a different school district that both the district that the person is asking to leave and the district that they're asking to go to both object to the petition for annexation? My experience is not entirely unique, but it is somewhat unique. Okay. And is there's weight, should, should any weight be given to both of the districts when the, when the school board of trustees meets and considers the annexation? I think the weight should be given as, as determined by the regional board of school trustees. It's up to them to give what weight they give the respective school districts position. Okay, thank you. Thank you. Mr. Schooley, I believe you said you would be going first. Yes, sir. All right. Whenever you're, whenever you're ready. Thank you. May it please the court counsel. I will dispense with a recitation of the facts other than to address the point made by Mr. Jackstead regarding the initial statements by me, the attorney for the regional board regarding the admissibility of the school report cards. Again, I believe that Mr. Jackstead accurately reported what the transcript said and what was, what my statements were initially at the beginning of the board hearing when we addressed Roxanna's objection to the admissibility of the school report cards. However, I need to point out, I am the attorney for the school, for the regional board of school trustees. I am not a member of the regional board of school trustees. And accordingly, the board of school trustees is free to take my statements or my recommendations regarding issues of admissibility of exhibits and accept them or reject them as they deem appropriate, according to a majority vote of the, of the regional board. So I believe his reliance, Roxanna's reliance on my statements is entirely misplaced and is truly a red herring. Clearly before we went, the board went into executive session, the record clearly reflects that I made the statement to the board that this was a close call regarding the admissibility of the, of the school report cards. And I would leave it entirely up to them in executive session as to whether they wanted to consider and admit the school report cards. That's clear. And in executive sessions, they did consider the school report cards and determined to admit them over the objection of the Roxanna school district. That determination is clearly reflected in the order entered by the regional board, granting the detachment and annexation where the order clearly states that the, I believe exhibit seven, the school report cards were admitted over the objection to Roxanna. And so I don't, I believe that, that any reliance placed on my statements at the initial outset of the hearing is entirely misplaced. Next, the school report cards under the statute, I think are clearly admissible. Um, the statute, um, requires that before, uh, that they are only excluded if all three of the conditions are met, that is more than 3% of the, uh, minority low income, uh, and, uh, English learner students, uh, that threshold is, is met. Uh, I cited two Supreme court cases, uh, in support of that proposition, which clearly state when the legislature uses the word and, uh, in a statute that lists a series of conditions that the legislature intended that all three of the conditions, all of the conditions be met, uh, before the statute is applicable. And this is a well-established, uh, precedent. Uh, I want to point out that, uh, the cases, uh, that I cited cite, uh, two cases, one from 1922 and one from 1901. And it's not often that we see precedence cited by cases that go back well over 120 years. So this precedent is well-established and I believe that, uh, that is governs the, the, uh, interpretation of the use of an here and it requires before that statute is that all three of those conditions are met. Clearly the school report card show that only two of the three, uh, conditions were met and that there was not a 3% difference in the status of the English, uh, learners, uh, between the could be admitted and considered, uh, uh, by the board. Uh, I want to point out that, that, uh, Roxanna has yet to cite any precedent for its proposition, uh, that, uh, this should be considered, uh, interpreted as an, or, uh, it makes arguments, uh, that, uh, I believe that are, uh, not acceptable and, uh, in accordance with what the Supreme court has laid down. And, uh, it really is, as, as I think was pointed out, uh, uh, under questioning, uh, Roxanna could not distinguish and, and tell us why the, the word and should not be used in the conjunctive sense. Uh, so clearly I believe that, that the regional school board properly interpreted the statute and admitted those, uh, school report cards. Uh, again, why are the school report cards, uh, important here? Uh, because they do provide, um, uh, a factual basis for the board's determination that there is a real, uh, benefit to the Hesseys and their child, uh, Holden, uh, in, uh, um, um, granting the annexation or detachment and annexation. And of course, the school report cards show a significant difference in the English language arts, uh, the, uh, math proficiency and the graduation rates as cited in my brief. And if you review the school report cards, you can see that standard of review here is, is clear. It's not that the, uh, justices or the court would come to a different conclusion, uh, if they were, uh, reviewing this matter anew, uh, do you know, that's not the standard. The standard here is whether or not, uh, these, uh, differences, uh, support are sufficient to support, uh, the manifest weight of the evidence standard. And I believe clearly, uh, those three metrics, uh, do support that standard. Are we not being asked to, uh, interpret the, uh, the language of the statute though? Yeah, with regard to the question of admissibility of the statute, that's a review de novo and that's true. And that if we were to review that first and finally do that first. Yes. And if you find, yeah. And if you find that the statute was admissible, then the next question goes, is that whether or not, uh, the board's determination, whether or not, uh, once these school report cards were admitted, whether or not they support the board's determination that there was a significant educational benefit. That's a different standard than that comes into play at that point in time. And, and that's, that's the manifest way to, uh, the evidence statute at that point. And it's our position that, that those three metrics do support the board's determination, uh, on the issue. Do you agree though, that, uh, with, with Mr. Jack stats position that, um, if we were to find that the, that the, uh, school report cards should not have been considered, uh, the way they were that the community of interest and whole child factors, uh, do not come into play because first we have to determine if we determined that the school report cards were the only basis for suggesting or finding that there was a significant direct educational benefit for the HESI child. Um, if that were the only thing not suggesting that is, but if that were the only basis for finding that educational benefit, then there's no reason to go into the community of interest or child factors at that point. Yeah. Um, the testimony of the HESIs, if you look at the board's order, there were alternative basis for granting the, the, the, um, detachment and annexation. Uh, and, and it's my position that the HESIs testimony would support even if you assume that it's, that we can't consider the community of interest. I believe that evidence that they presided would, would, would support the second alternative basis that, that we provided, uh, uh, in, in the order. And so can you just, and I don't mean to put you on the, on the, on the spot here, I guess I'm going to, but, uh, are you, uh, are you able to cite any direct testimony from either of the Mr. Or Mrs. HESI that supports that there's an educational benefit outside of something that is clearly community of interest or whole child factors? Uh, not, I, I, maybe Ms. Smith, she was, she was going to address those factors and Ms. Smith, I'm going to give you more time since I'm cutting into your half. Okay. Thank you. Yeah. I believe Ms. Smith would be more familiar with, with, with that. Uh, I believe that evidence is, is, is, is not just that they can, that, that, that can overlap. I would point out that, that under the alternative basis, Roxanna cited no detriment, uh, uh, in any way, shape or form to allowing the, uh, uh, uh, detachment and annexation, which is one of the basis is for, uh, uh, uh, considering the alternative basis that we. Is it their burden? It's not, it's not necessarily their burden, but it's a balancing test, uh, the, the alternative. And, and so, uh, uh, the question becomes then is, is whether the detriment, uh, to Roxanna favors the, or outweighs the, the, the, the benefit, uh, to the HESIs and their child and, and the alternative basis is, it is a balancing test under the case law. Okay. Thank you. Um, yes, thank you. Good morning. Good morning, your honors and counselors. May it please the court. Uh, my name is Kathy Smith and I'm here on behalf of Jay and Sharon Hesse, the petitioners. Uh, Jay and Sharon are the parents of an 11 year old boy named Holden Hesse. He's, uh, now in the fifth grade. He's attended St. Boniface parochial school in Edwardsville since pre-kindergarten. And he's now at an age where the students at the parochial school are transitioning into public school so that they can take advantage of, uh, more extracurricular activities and a broader curriculum. How long, what, what, uh, you said he goes to St. Boniface currently? I think so, yeah. What, what grade level does St. Boniface go to? Does it go to eighth grade? I believe he's in what grade now? He's in fifth now. Fifth grade. Okay. And I'm not from, I've asked and she, and the parents say, this is a, a typical time when they're entering junior high. And that's when the, the, I, the boys, uh, the, and the students get more involved in, um, all of the extracurricular activities and sports that the public school offers. Okay. For an example, uh, St. Boniface, uh, his class is left with, uh, five boys and 22 girls because Holden's, uh, friends and classmates have, uh, transitioned to the Edwardsville public school. Um, the Hesse's... Did his parents ask him if he wanted to leave that situation? Well, I think his parents, maybe that's why they filed the petition. Okay. But, um, I think was said earlier, they live at 10 Hesse Lane in Edwardsville. And so they were surprised when they went to enroll Holden in the Edwardsville school that, uh, they found out that their house actually sits in Roxanna. They own two pieces of property adjacent to each other and their house sits on the piece that's in the Roxanna school district. And the adjoining lot next to them that they own is in the Edwardsville school district. So, um, the testimony at the regional board hearing that was presented by Jay and Sharon Hesse showed that they're very active parents, uh, very active in the Edwardsville community. They participate in all of their son's activities. And he, he's obviously a very active boy, um, participating in soccer and baseball and basketball and Jay and Sharon, uh, coach most of those sports and they're his den leaders and his Cub Scout troop. Uh, Sharon has been a tutor and a teacher's aide each year at St. Boniface. I don't mean to cut you off on this, but with the limited time, and I know we're giving you a couple extra minutes on this, but can you get into the we know the background of the people? Okay. I will. You can tell us why you think that the board's decision in the court's decision was right. I will. Um, the two most important cases, uh, with the direct educational benefit, because I think there's a direct educational benefit, of course, in sending Holden to, um, Edwardsville and allowing, how was it proven? And just for argument's sake, how was it proven? Uh, how was that proven outside of, uh, any consideration of the school report cards? Okay. The, uh, cases of Carver and golf are both Supreme court cases. And the, uh, case in Carver found that where a child maintains When was that decided? That was decided. I'm sorry. When was that case decided? I believe it's 1992. Okay. The statute has changed since, uh, since then in 2016. Well, and if I may jump ahead, um, we've gotten, uh, focused on this, uh, issue of the school report cards. And there's this, the statute that passed said that the regional boards can't consider the school report cards, um, unless there's a direct educational benefit that was found first. Right. Right. And I think that there's evidence that a direct educational benefit can be found. Um, that's what I'm looking for specifically from you, as I asked Mr. Schooley, there's no, you know, and I think in the alternative, the regional board found in the alternative that they would have made the same decision if they wouldn't have considered the school report card. So it's based on what though, based on, um, the issue of, you know, Holden's involved in the community, community of interest, there's a direct educational benefit on that student. Um, and that's how you're tying in that Supreme court cases because they found that community of interest, uh, issues also, uh, are in a situation where unless you find a direct educational benefit first, without those things, you don't get to those things. So how did they, how would the school board of trustees find an, a direct significant direct educational benefit without considering those community of interest and whole child issues? It does. It does. I, it, it can become circular, but if we also, uh, golf Wheeler Bowman Jonesboro, they find that there's the direct educational benefit to the student where it's broadly interpreted. And it's found where a student connects and identifies with a particular community and where his natural community center is that will increase the student's participation in school and extracurricular activities and increases the student's participation. So the direct education, more of a whole child, uh, factor that the Supreme court was considering. I'm, I'm reading straight from the cases and the case, there are cases that say you cannot consider the whole child factors without first finding the direct educational benefit. I'm not talking, I'm backing up. I'm backing it up. And sure. I think obviously there's the whole child and community of interest factors, but I know that that's not the issue here because that's obvious. The issue is whether there's a direct educational benefit to Holden so that we would grant the petition. And I guess, I guess the problem I'm having with that position is that we are instructed by the new and revised statute that we should not consider those things. Uh, first that the, the regional board of, of they have to consider whether there's an educational benefit first and foremost. And then if there is, then they consider the whole, the, the child factors in the community of interest in, uh, questions. Um, and I don't know how we get to consider those things first when the statute says not to. Well, I think then we have to read the Carver case. The Carver case says, how do you determine whether it's a direct educational benefit for the student to grant the annexation? And the Carver case says that where the child, and I know it may sound circular, but where the child maintains this community of interest and where his community has been focused, that is the going to be and factor into whether there's a direct educational benefit. The child is going to be more active to, uh, likely to participate in extracurricular activities. So there will be a direct educational benefit where the student has, uh, ties to that community and has a long-term, longstanding interest in that community. The court found in Carver, therefore, there's a direct educational benefit and granting the annexation can be justified. Are you in agreement though, that they're, that Sheppard is the only case that's been decided since 2016 amendment to the statute in regard to, uh, how this is supposed to go? Right. But I don't think that Sheppard deals, uh, so much with the educational benefit of the child rule. I think that's, I think we're getting caught up in this school report cards issue. So, so based on what you just said with regard to Sheppard, so this is essentially a case of first impression since the 2016 case came down or statute was amended. Yes. Good for you. So, but yeah, and I mean the car, I think the Carver case is very important. It says that the, the judiciary shouldn't be treated as a super school board. Um, the regional board should be, uh, counted on to address the statutes and the law and even the regional board in their five page single space decision decided in the alternative, as Mr. Schooley said, that the board made it clear that even if the school report cards weren't considered, they found that based on these community interest factors, um, and the Hesse's and Holden's strong involvement in the community, it would be in his best interest to allow him to continue to attend school in Edwardsville. So Mr. Jack stats argument is, it was clear that that alternative reasoning is flawed because they considered the wrong things and making coming to that conclusion. Um, so, uh, okay. Um, yeah. And so, I mean, it's to find the direct educational benefit first, which I think we've done here. If you've done that, then you can also bring in the community of interest and whole child factors. And, oh, in a few years ago, there was a statute passed that had to do with whether a regional board can also, uh, consider school report cards. Our board said that they've, uh, they'd arrive at the same decision, whether or not the school report cards were admitted into evidence. So I'd like to back up and say methodically in order to decide whether a petition annex should be granted, we need to decide what another case that talks about any other way to find out whether relocating that student will have a direct educational benefit on that student. Aside from, uh, we have Carver, golf, Wheeler, Bowman, Jonesboro. They talk about these community of interest factors and whether, uh, the natural community center of the child is in that new school district and what's in the best interest of the student. And I think here it's obvious that there's a direct educational benefit for him to continue to attend school in Edwardsville. Let me ask you one last question. Um, nowhere in your brief do you, uh, uh, suggest that the court has de novo review in interpreting the statute? You, you, uh, uh, and I know that the circuit court, um, uh, found that the court, the proper, uh, review was de novo. Uh, just very, very briefly, what's your position on our, our standard review in this case? I agree that it's de novo. Okay. Thank you. All right. Any questions? Uh, Justice Welch, just as well. No questions. No questions. All right, Ms. Smith. Thank you very much, Mr. Jackson. You have five minutes. You're on mute. I'm sorry. Thank you. Um, other than the same community of interest and whole child factors, Ms. Smith or Mr. Schooley referenced really no new evidence that the Hesse's produced that would support the finding that there would be a significant direct educational benefit to never introduce the school report cards and did not argue the information contained therein supported of finding that there was a significant direct educational benefit. That's because the parties during this proceeding thought that the school report cards were not going to be admitted into evidence. Um, as the court is, is, is aware of the Carver, the golf, the Wheeler, the Bowman Jonesboro decisions were all decided before the January one, 2016 amendments. And I think it is important to go back to the statute and get what we're getting at. This is not a statute that excludes the school by, by its school report card. It's in the positive that the direct, the, when considering the effect of detachment and the direct educational welfare, the pupils, the school report cards shall be considered. And again, only if there is no more than a 3% difference in the minority, low income and English learner student populations. That's what it says. We're not trying to get all three to exclude them. We need all three to include them. The legislature has said in order to sit this in order to consider school report cards, the school districts must be considered similar. They are considered similar right or wrong by the statute because if they are similar, they will have no more than a 3% difference in the minority, low income and English learner populations. So based on the arguments we've made in our briefs and today, again, Roxanna respectfully request the regional board's decision be reversed. Thank you. Uh, thank you all for your arguments today. Um, be safe on the road and with these weather conditions. Uh, we will take this matter under consideration and issue our ruling in due course. Thank you all. Thank you.